UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN JACKSON,                              Case No. 18-10214

               Plaintiff,                 Judith E. Levy
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Stephanie Dawkins Davis
SECURITY,                                    United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 15)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On January 18, 2018, plaintiff Justin Jackson filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Judith E. Levy referred this matter to the undersigned for the purpose of reviewing

the Commissioner's unfavorable decision that plaintiff was no longer entitled to

childhood supplemental security income benefits based on a redetermination of

disability after he reached the age of 18.  (Dkt. 3).  Currently before the Court are

the parties' cross-motions for summary judgment.  (Dkt. 12, 15).

B.    <u>Administrative Proceedings</u>

Jackson was awarded childhood supplemental security income benefits in 2002.  (Tr. 66-69).[1]  When Jackson reached the age of 18, as required by law, eligibility for these benefits was redetermined based on the disability standards for adults.  (Tr. 11).  On January 10, 2014, it was determined that Jackson was no longer disabled.  *Id.*  Jackson requested a hearing and on September 20, 2016, he appeared without counsel, before Administrative Law Judge ("ALJ") Crystal L. White-Simmons, who considered the case *de novo*.  (Tr. 27-60).  In a decision dated March 29, 2017, the ALJ found that Jackson was not disabled.  (Tr. 8-21).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 26, 2017, denied Jackson's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

## II.   ALJ FINDINGS

Jackson, born September 13, 1995, was 21 years old when the hearing was held.  (Tr. 20).  Jackson has a high school education but has never worked.  *Id.*  He lives in an apartment with his mother.  (Tr. 37).  He says he cannot work because it is hard for him to deal with people, he does not like taking orders, he does not like being around people, and he just wants to stay in his room by himself.  (Tr. 40-41).

The ALJ applied the five-step disability analysis.  The ALJ noted that step one (whether the claimant has engaged in substantial gainful activity) does not apply when redetermining disability at age 18.  (Tr. 12, citing 20 C.F.R. § 416.987(c)).  At step two, the ALJ found that Jackson's learning disability, hyperactivity, asthma, adjustment disorder, and borderline intellectual functioning were "severe" within the meaning of the second sequential step.  (Tr. 13). However, at step three, the ALJ found no evidence that Jackson's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 14-15).

Thereafter, the ALJ assessed Jackson's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that since January 10, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no concentrated exposure to environmental irritants; no

3

> exposure to unprotected heights; work is limited to
> simple, routine, and repetitive tasks with only occasional
> interaction with the public and coworkers; no climbing of
> ladders, ropes, or scaffolds; and no concentrated
> exposure to excessive noise.

(Tr. 16).  At step four, the ALJ found that Jackson had no past relevant work.  (Tr.

20).  At step five, the ALJ determined that, since January 10, 2014, there were jobs

that exist in significant numbers in the national economy that Jackson can perform,

and therefore, he was not entitled to continuing benefits as of that date.  (Tr. 20-

21).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different

7

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

> If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

> C.    Analysis and Conclusions

> 1.    Seizure disorder

Jackson argues, in a manner most perfunctory, that "no evidence supports a

finding that Plaintiff's seizures were non-severe."  (Dkt. 12, p. 6).  Jackson's

argument is woefully inadequate.  "[I]ssues adverted to in perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It

is not sufficient for a party to mention a possible argument in the most skeletal

way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997).  Moreover, the Commissioner correctly points out that

Jacksons bears the burden of proving that any alleged impairment "significantly

limit[ed his] physical or mental ability to do basic work activities," *Heston v.

Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001) and that the impairment

had lasted or was expected to last for a continuous period of at least twelve

months.  *Brown v. Comm'r*, 672 F. Supp. 2d 794, 795-96 (E.D. Mich.

2009).  Jackson's argument suggests that the Commissioner must prove the

inverse: that nothing in the record shows that he *does not* have a severe seizure

disorder.  This suggestion is without merit.  And, as the Commissioner also points

out, substantial evidence supports the ALJ's finding that Jackson did not have a

seizure disorder: he denied seizures in December 2013, May 2015, and September

2015 (Tr. 250, 278, 293); when he had a possible seizure in June 2016, he showed

no neurological deficits (Tr. 302); and the ALJ correctly observed that there is no

other mention of seizures or neurological problems in the record (Tr. 14).

      2.    Treating Physician

Jackson next argues that the ALJ's conclusion that the treating medical

provider's opinion should be given little weight is not supported by substantial

evidence.  The Commissioner correctly observes, as did the ALJ, that there is no

treating physician opinion in this record.  Accordingly, Jackson's argument in this

regard is entirely without merit and need not be considered further.

10

3.    RFC

Jackson argues that the ALJ failed to thoroughly flesh out his mental

residual functional capacity.  20 C.F.R. § 404.1545 (2012) provides that the

Residual Functional Capacity is "the most you can still do despite your

limitations."  The ALJ in this case assessed an RFC accounting for Jackson's

mental impairments: as stated above, Jackson was limited to work with simple,

routine, and repetitive tasks, with only occasional interaction with the public and

coworkers, and no concentrated exposure to excessive noise.  (Tr. 16).  The

undersigned concludes that the ALJ did not err in fashioning the RFC and that

substantial evidence supports the RFC.

In devising the RFC, the ALJ relied on the opinions of consultative examiner

Dr. Hayter's, Dr. Czarnecki's opinion, and Dr. Yousuf's opinion, as well as other

medical evidence in the record.  (Tr. 18-19).  Dr. Hayter opined that Jackson could

understand, retain, and follow simple instructions and perform simple, routine,

repetitive, concrete, tangible tasks.  (Tr. 254).  This supports the ALJ's finding that

Jackson could do simple, routine, repetitive tasks.  (Tr. 16).  Dr. Czarnecki opined

that Jackson could do simple tasks, (Tr. 257), which also supports the ALJ's

finding that Jackson could do simple, routine, and repetitive tasks.  (Tr. 16).  Dr.

Yousuf similarly opined that Jackson was able to perform simple, unskilled work.

(Tr. 262).  There are no contradictory opinions in the record, contrary to Jackson's assertions.

The limited treatment notes in the record do not suggest that Jackson is more limited than stated in the RFC.  Jackson's providers at Eastwood Clinics diagnosed a mood disorder, but also assessed GAF scores of 55 and 65.  (Tr. 17; Tr. 281, 295).  The undersigned agrees with the Commissioner that these scores were consistent with the ALJ's findings that Jackson had moderate mental limitations but could still perform a range of simple, unskilled work.  (Tr. 14-16).  Moreover, nothing in Jackson's treatment records suggests a severity of symptoms that would render him unable to work.

Jackson also attempts to undermine the RFC with a few other perfunctory and undeveloped arguments, including that the ALJ "minimized the severity" of his headaches, ADHD diagnosis and mood disorder.  Not only is this argument waived because it is undeveloped, Jackson points to no medical evidence in the record suggesting he was more limited than as found by the ALJ.  Additionally, the undersigned agrees with the Commissioner that the ALJ could not have considered the fact that Jackson's mother passed away in June 2017 because that evidence was not before the ALJ.  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  And, to the extent Jackson points to his own testimony about his symptoms, the Commissioner correctly observes that he has not challenged the

ALJ's credibility findings, in which the ALJ concluded that his subjective complaints were not entirely consistent with the medical and other record evidence. (Tr. 16). As the ALJ observed, Jackson's mental status examinations showed no distractibility or restlessness, good hygiene and grooming, fair or intact memory, fair impulse control, no suicidal or homicidal ideation, and, with treatment, fair attention and concentration. (Tr. 17, citing Tr. 250-52, 280, 294, 350-51). Again, three consulting experts opined that Jackson's mental limitations were not disabling. (Tr. 254, 257, 262).

The evidence discussed above provides substantial evidence in support the ALJ's RFC determination. *See Rogers*, 486 F.3d at 241 (Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Accordingly, the undersigned finds no error in the RFC determination.

### 4. Weight given to Dr. Hayter's opinion

Jackson also argues that the ALJ gave undue weight to Dr. Hayter's opinion and that his opinions were limited in time, scope, and contrary to Jackson's "longstanding history of mental impairment." Jackson points to treatment notes from Eastwood Clinics documenting mood swings, depression, and agitation, Jackson throwing and slamming objects and physically acting out, and describing Jackson as sad, irritable, and anxious. (Tr. 350-351). According to Jackson, other

13

medical evidence documents suicidal thoughts and overt aggression, feelings of depression and hopelessness, along with a history of suicidal threats or attempts, homicidal threats or attempts, or threats of carrying out severe acts of violence. (Tr. 280, 289). In fashioning this argument, Jackson again suggests that the ALJ inappropriately gave more weight to Dr. Hayter's opinion than to his treating physician opinion.

As discussed more fully above, Dr. Hayter's opinions are supported by the overwhelming medical and other record evidence. It is well-established that opinions from reviewing State agency physicians "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p; 1996 WL 374180, at *3; *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.") (quoting SSR 96-6p, 1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11, 2014) ("[I]t is not a per se error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion."). Here, contrary to Jackson's suggestion, there is no treating physician opinion. Thus, the ALJ could not have explained why he gave more weight to a consulting opinion than a treating physician opinion. And again, the opinions of state agency medical and

14

psychological consultants may be entitled to significant weight where, as here, they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i).  There is thus no basis to disturb the ALJ's analysis of and weight given to Dr. Hayter's opinions.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 27, 2019
s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 27, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov